# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **TAMMY ASHBURN,** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>**ANDREW SAUL, Commissioner of** )<br>**Social Security,** )<br>)<br>**Defendant.** )<br>) | Civil Action Number<br>**4:19-cv-00082-AKK** |

## **MEMORANDUM OPINION**

Tammy Ashburn brings this action pursuant to Section 405(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). For the reasons explained below, the court finds that the Administrative Law Judge ("ALJ") applied the correct legal standards and that the ALJ's decision, which has become the final decision of the Commissioner, is supported by substantial evidence. Therefore, the decision denying benefits is due to be affirmed.

## I.

Ashburn worked as a fast food worker, cashier, inspector/hand packager, meat wrapper, cleaner, and stocker until she suffered allegedly disabling injuries in a car accident and stopped working at age 45. Doc. 6-3 at 36-39. Ashburn filed an

application for disability insurance benefits, alleging a disability onset of April 23, 2014, due to the accident, severe whiplash, and torn vertebrae in her back.  Doc. 6-4 at 52.  The SSA denied her application, and Ashburn requested a hearing before an ALJ.  Docs. 6-4 at 62; 6-5 at 90.  After the hearing, the ALJ issued a decision finding that Ashburn was not disabled.  Doc. 6-3 at 24.  Subsequently, the SSA Appeals Council denied Ashburn's request for review, rendering the ALJ's decision the final decision of the Commissioner.  *Id.* at 1.  Having exhausted her administrative remedies, Ashburn filed this action.  Doc. 1.

## II.

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "'reasonable and supported by substantial

evidence.'" *Id*. (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "'[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against those findings. *See id.* While judicial review of the ALJ's findings is limited in scope, it "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

In contrast to the deferential review accorded the Commissioner's factual findings, "conclusions of law, including applicable review standards, are not presumed valid" and are subject to de novo review. *Martin*, 894 F.2d at 1529. The Commissioner's failure to "apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed" requires reversal. *Id.*

### III.

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. §§ 423(d)(1)(A); 416(i)(1). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). Specifically, the ALJ must determine in sequence:

(1)  whether the claimant is currently unemployed;

(2)  whether the claimant has a severe impairment;

(3)  whether the impairment meets or equals one listed by the Secretary;

(4)  whether the claimant is unable to perform his or her past work; and

(5)  whether the claimant is unable to perform any work in the national economy.

*See McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. (citing 20 C.F.R. § 416.920(a)-(f)). "Once [a] finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). However, the claimant ultimately bears the burden of proving that she is disabled, and, "consequently [s]he

is responsible for producing evidence in support of he[r] claim." *See, e.g.*, *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.945(a), (c)).

## IV.

Applying the five-step analysis, the ALJ first determined that Ashburn met the insured status requirements of the Act through June 30, 2015 and that she had "not engaged in substantial gainful activity since . . . the alleged onset date" of her disability. Doc. 6-3 at 18. The ALJ proceeded to Step Two, finding that Ashburn had the severe impairments of: status post motor vehicle accident, degenerative disc disease, hypertension, and obesity. *Id.* at 19. At Step Three, the ALJ concluded that these impairments did not "meet[] or medically equal[] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." *Id.*

Next, the ALJ determined Ashburn's residual functional capacity ("RFC"), stating that:

> [Ashburn] has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with occasional pushing or pulling with the upper and lower extremities; no climbing ladders or scaffolds; occasional climbing ramps and stairs; occasional balancing and stooping; no kneeling, crouching, or crawling; avoid concentrated exposure to extreme heat, cold, and vibration; no exposure to dangerous machinery or unprotected heights; and no work requiring walking on uneven or slippery surfaces.

Doc. 6-3 at 19. Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found at Step Four that Ashburn "is unable to perform her past relevant

5

work . . . ." *Id.* at 22. The ALJ then proceeded to Step Five, where based on Ashburn's RFC, age, education, prior work experience, and the VE's testimony, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Ashburn] can perform," and that "[Ashburn] is capable of making a successful adjustment to [this] other work." *Id.* at 22. Accordingly, the ALJ found that Ashburn "has not been under a disability, as defined in the [] Act, from April 23, 2014," through the date of the ALJ's decision. *Id.*

## V.

Ashburn raises multiple contentions on appeal, arguing that the ALJ erred by: (1) discounting her subjective complaints of disabling pain; (2) improperly weighing the opinion of Dr. Anand Iyer; and (3) failing to consider poverty as a reason for the purported lack of medical evidence to support Ashburn's complaints of pain. Doc. 14 at 8, 11-13.

### A.

When, as here, a claimant alleges disability because of pain, she must present "evidence of an underlying medical condition" and show either that "objective medical evidence [] confirms the severity of the alleged pain arising from that condition" or "that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted). Thus, a claimant's

"subjective testimony supported by medical evidence that satisfies [this] standard is itself sufficient to support a finding of disability." *Id.* (citations omitted).  However, an ALJ may properly discredit a claimant's subjective testimony if the ALJ clearly articulates his reason for doing so and substantial evidence supports the ALJ's determination.  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also Marbury v. Sullivan*, 957 F.2d 837, 839-40 (11th Cir. 1992).

Ashburn testified that she became disabled in 2014 when she suffered injuries to her neck and back in a car accident involving an 18-wheeler.  *See* doc. 6-3 at 36-37.  According to Ashburn, the accident left her with two torn vertebrae in her lower back, causing pain in that area that radiates down her right leg, with numbness and tingling, and her pain has slightly worsened over time.  *Id.* at 41-42.  Ashburn described the pain as constant, averaging a six to seven on a ten-point scale, and she noted that cold and rainy weather exacerbates her pain.  *Id.*  She testified that, due to the sensation in her right leg, she cannot stand for more than ten to fifteen minutes at a time, sit longer than twenty-five minutes without needing to lay down, or walk a city block without problems.  *Id.* at 41-43.  Ashburn also reported that she spends most of her days in a recliner with a pillow behind her, that pain prevents her from getting out of bed five to six days per month, that she rarely drives due to right leg numbness, and that during the course of an eight-hour workday she would need to lay down for two hours.  *Id.* at 36, 43-44.

As to her day-to-day activities, Ashburn testified that she can perform less labor-intensive tasks, such as folding laundry and preparing food in a crockpot, but she cannot do yardwork, housecleaning, or lift anything heavier than her three-and-a-half pound dog. *Id.* at 45, 48. And, Ashburn has gained thirty pounds because of her mobility issues and inability to work. *Id.* at 35. Finally, Ashburn testified that she prefers not to take pain medication but has not been able to seek other treatment due to her lack of health insurance. *Id.* at 40.

The ALJ considered Ashburn's testimony and found that, although Ashburn's impairments could reasonably be expected to cause some of her alleged symptoms, Ashburn's statements "concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent" with the medical evidence and other evidence in the record. Doc. 6-3 at 20-21. Ashburn counters that the objective medical evidence that she has a normal gait and full strength and sensation does not rule out that she may still be in severe pain. Doc. 14 at 12. This contention is unavailing because the ALJ did not rely only on those limited observations when making his credibility determination, *see* doc. 6-3 at 20-21, and substantial evidence supports the ALJ's finding.

To begin, on the day of the motor vehicle accident in April 2014, Ashburn sought treatment from an emergency department. Doc. 6-8 at 3-12. At that time, Ashburn reported pain she rated as a nine or seven on a ten-point scale in the left

side of her neck and back and in her left arm and shoulder. *Id.* at 8-9. But, as the ALJ noted, x-rays of her cervical spine, left shoulder, and back revealed no evidence of fractures or other abnormalities, and she was discharged in stable condition with instructions to avoid heavy use of her left arm and to apply ice and take over the counter medications for pain. *Id.* at 5-6, 8-11; *see also* doc. 6-3 at 20.

Approximately a month later, Ashburn sought treatment from Dr. Timothy R. Pflugner, an orthopedic surgeon, for neck, low back, and left shoulder pain. Doc. 6-8 at 46. Upon physical examination, Dr. Pflugner observed that Ashburn was in no acute distress, exhibited tenderness in her cervical spine, but no tenderness in the thoracic or lumbar spine, and that Ashburn had full range of motion in the cervical spine, shoulders, and hip, and full strength throughout. *Id.* at 46-47. Dr. Pflugner ordered an MRI that revealed moderate cervical disc herniation at C5-C6, mild disc bulge at C6-C7, and moderate disc bulge at L4-L5 and L5-S1. *Id.* at 49, 54-56.[1] When Ashburn returned to Dr. Pflugner shortly after the MRI, Ashburn's physical exam revealed normal findings, including normal range of motion, full strength, and

---

[1] Ashburn contends that the ALJ failed to discuss the results of her May 15, 2014 MRI, which she argues is strong probative evidence supporting her subjective complaints of pain. Doc. 14 at 12 (citing Doc. 6-8 at 54). On the contrary, the ALJ explicitly stated as follows: "[Dr. Pflugner] ordered magnetic resonance imaging (MRI), which revealed a cervical disc herniation at C5-C6 with multi-level degenerative change. No significant abnormalities were noted in the thoracic spine MRI, while lumbar imagining indicated degenerative changes with narrowing of the spinal canal and neural foramina." Doc. 6-3 at 20. Moreover, the MRI does not contradict the ALJ's findings, when considering the record as a whole, or show the presence of a condition the ALJ did not consider in reaching his decision.

negative straight leg exam, and Dr. Pflugner recommended only conservative treatment with physical therapy and medication. *Id.* at 48-49.

The record shows next that in September 2014, Dr. Jeremy Barlow diagnosed Ashburn with lumbar disc displacement, facet capsule disruption and radiculopathy, chronic low back pain, cervical facet capsule disruption, and cervicalgia. *Id.* at 64-65. Dr. Barlow treated Ashburn's condition with a disc decompression, selective nerve root block, and trigger point injections in September 2014. *Id.* Dr. Barlow also referred Ashburn to Dr. Reginald Smith, a pain management physician, and, at Ashburn's initial appointment with Dr. Smith in late July 2015, she reported neck and back pain rated as an eight on a ten-point scale, with pain, numbness and a burning sensation radiating down her right leg. *Id.* at 28. Dr. Smith's examination revealed that Ashburn was in no acute distress and had no abnormalities aside from tenderness in her back, and he prescribed Norco tablets to treat Ashburn's pain. *Id.* at 28-29.

Ashburn returned for treatment a month later and reported that the Norco was effective, with no side effects, but that her pain level that day was a seven out of ten. *Id.* at 26. At that visit, Ashburn also expressed concern about a lump in her upper back, and Dr. Ruth Snow explained that the lump was a normal spinous process that was likely more noticeable because of muscle spasm. *Id.* at 27. Dr. Snow gave Ashburn a home exercise program for neck muscle spasm and arthritis. *Id.*

Approximately one month later, Ashburn had a lumber x-ray that revealed only mild degenerative changes and early spondylosis with no acute findings.  *Id.* at 35.

On October 3, 2015, Dr. Anand S. Iyer performed a consultative examination. *Id.* at 37.  Dr. Iyer noted Ashburn's reports of worsening lower back pain radiating to her right leg and difficulty turning her head from side to side.  *Id.* Upon examination, Dr. Iyer observed that, although Ashburn's straight leg test was positive, Ashburn had full strength, no difficulty getting on or off the examination table, walked with a normal gait, could walk on her heels and tiptoes, and could squat.  *Id.* at 38.  Dr. Iyer found that Ashburn had decreased range of motion in her neck and back, and full range of motion in her hips, knees, and ankles.  *Id.*

Finally, as the ALJ noted, after the consultative exam, Ashburn saw her primary care physician, Dr. John Keithan, approximately monthly from October 2015 through June 2016 for chronic back pain and to refill her medication for pain. Doc. 6-9 at 3-13; *see also* doc. 6-3 at 21.

Taken together, these medical records provide substantial evidence to support the ALJ's determination that Ashburn's symptoms were not as limiting as she claims.  While it is clear that Ashburn has experienced significant pain in her neck and back since the automobile accident, the question before the court is not whether the ALJ could have credited Ashburn's subjective testimony, "but whether the ALJ was clearly wrong to discredit it."  *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x

11

935, 939 (11th Cir. 2011).  In light of the substantial deference owed to the ALJ's decision, *see Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005), the court finds that the ALJ properly applied the pain standard and did not err by discounting Ashburn's subjective accounts of pain.

## B.

Ashburn also suggests that the ALJ erred by affording "partial weight" to the opinions of Dr. Iyer, a consultative physician.  Doc. 14 at 11.  Dr. Iyer opined that Ashburn "may have some impairment of functions involving:  sitting, standing, walking, climbing steps, bending, lifting, twisting, carrying, and reaching overhead[,]" and "does not have significant limitation of functions involving: handling, hearing, and speaking."  Doc. 6-8 at 39. The ALJ considered these opinions but gave them only partial weight because they were "vague and do not fully describe [Ashburn's] abilities and limitations . . . ."  Doc. 6-3 at 22.  The court finds no error in this finding.  First, no deference is due to the opinion of a one-time examining physician.  *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (citation omitted).  Moreover, Dr. Iyer's opinion is indeed vague as the ALJ noted. Dr. Iyer only opines that Ashburn may have some impairment in certain functions, and he does not attempt to define the amount of Ashburn's potential impairments. *See* docs. 6-3 at 21; 6-8 at 39.

## C.

Finally, in discounting Ashburn's subjective testimony, the ALJ noted that there was "minimal medical evidence to support [Ashburn's] allegations . . . ." Doc. 6-3 at 21. Ashburn contends that the ALJ erred by failing to consider the impact poverty had on Ashburn's ability to procure additional treatment. Doc. 14 at 12-13. Ashburn is generally correct that an ALJ cannot draw an adverse inference from a claimant's failure to comply with recommended medical treatment when the failure is due to poverty. *See Ellison v. Barnhart*, 355 F.3d 1272 (11th Cir. 2003) (noting that "'poverty excuses noncompliance'" with a prescribed treatment or medication that could remedy a disabling condition) (citing *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)). But here, the ALJ did not base his adverse decision on a finding that Ashburn failed to comply with medical treatment that could remedy a disabling condition. Rather, the ALJ relied primarily on the contradictions that exist between the medical treatment records and Ashburn's complaints of pain, commenting that "despite [Ashburn's] complaints of pain, she consistently maintains a normal gait with full strength and sensation throughout, significantly undermining her allegations of sharply limited physical abilities." Doc. 6-3 at 21. Thus, Ashburn has not shown that the ALJ erred.

## VI.

Based on the foregoing, the court concludes that the ALJ's determination that Ashburn is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching his decision. Therefore, the Commissioner's final decision is due to be affirmed. A separate order will be entered.

**DONE** the 30th day of July, 2020.

*[signature: Abdul Kallon]*

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE